William Jack, surviving Partner of William Jack and A. S. Morrow, James Gardner and W. H. Gardner, deceased, formerly trading as Gardner, Morrow & Co., for the use of John Cree, Assignee for the benefit of Creditors of Gardner, Morrow & Co., v. A. C. Moyer and James P. Gardner, trading as A. C. Moyer & Co., Appellant.

*Banks and banking—Overdraft—Evidence.*

In an action by a bank against a depositor to recover an overdraft upon an entire account, it is proper to admit in evidence the bank book showing the settlement and all the vouchers sustaining it, such as checks, drafts and notes; and the bank is entitled to have the whole account as thus shown submitted to the jury.

*Evidence—Competency of witness—Party dead—Act of May 23, 1887.*

Under the Act of May 23, 1887, P. L. 158, sec. 5, clause *e*, a partner of a defendant firm is incompetent to prove a contract made by himself with a dead member of the plaintiff firm, in order that his firm and, consequently, himself, may escape a liability to which, upon the face of the plaintiff's claim he and his partners are otherwise liable.

Argued April 19, 1898. Appeal, No. 100, Jan. T., 1898, by defendants, from judgment of C. P. Blair Co., Oct. T., 1897, No. 69, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Assumpsit to recover an overdraft. Before BELL, P. J.

At the trial counsel for plaintiffs offered in evidence the following checks of A. C. Moyer & Co. upon the banking house of Gardner, Morrow & Co.:

| | | | | | |
|---|---|---|---|---|---|
| Check dated August 5, 1894 | . | . | . | . | $ 4.00 |
| " " September 3, 1894 | . | . | . | | 40.00 |
| " " September 3, " | . | . | . | . | 60.00 |
| " " September 18, " | . | . | . | | 60.00 |
| " " September 27, " | . | . | . | . | 138.70 |
| " " November 12, " | . | . | . | | 50.33 |
| " " January 17, 1895 | . | . | . | . | 47.00 |
| " " February 14, " | . | . | . | | 35.00 |
| " " February 16, " | . | . | . | . | 19.60 |
| " " April 2, " | . | . | . | | 140.96 |
| " " July 24, " | . | . | . | . | 46.50 |
| " " October 11, " | . | . | . | | 46.50 |
| " " January 28, 1896 | . | . | . | . | 16.00 |
| Draft " April 2, 1895, drawn upon Gardner, | | | | | |
| Morrow & Co. by A. C. Moyer & Co. for the | | | | | |
| sum of | . | . | . | . | 46.50 |

This for the purpose of showing that upon the request of defendants, plaintiffs paid and advanced to defendants, upon their written orders, the amounts of money represented by these checks and drafts; to be followed with evidence showing the credits of defendants in the bank, and the bank book of the defendants.

Counsel for the defendants objected (1) because the plaintiffs have not declared upon these checks, and the offer is a departure from the pleadings in the case; (2) the payment of a check is not even prima facie evidence of an indebtedness of the drawer of the check. A check is the draft of a person upon a fund in the possession of another, and it is no evidence in this case of an indebtedness owing by the defendants to these plain-

tiffs. Plaintiffs cannot, by the production of checks and bank books simply, show an indebtedness arising upon an overdraft by checks. The payment of a check is presumed in law to be the payment of a debt by the drawee to the drawer. Before liability arises the plaintiffs must show by proper testimony, either parol or otherwise, that it was an overdraft, because there may be other credits to which the parties are entitled that do not appear by that simple transaction, evidenced by the checks alone.

By the Court: If the offer is to be followed by the evidence indicated, we will admit it as preliminary proof leading up to the proof of an overdraft. To which the defendants except. Bill sealed. [1]

Counsel for plaintiffs now offers in evidence note of A. C. Moyer & Co., payable to the order of F. H. Hastings, cashier, dated October 8, 1895, for $3,000. Paid by Gardner, Morrow & Co., January 15, 1896. Indorsed: For collection and credit for account of Second National Bank, Altoona, Pa. Frank Hastings, cashier.

To be followed with evidence that the note offered was paid by Gardner, Morrow & Co.

Counsel for defendants object to this offer because it is not declared upon as plaintiffs' cause of action in this case; that the plaintiffs, withouts an amendment to the pleadings, cannot offer in evidence a note of A. C. Moyer & Co. held by the Second National Bank of Altoona; that there is no notice to these defendants that they would be called upon to meet a liability arising from the note just now offered; that the note not being the subject of book entry the defendants had no notice they would be surcharged in this issue with either this or any other note.

By the Court: As I understand the offer it is to be followed by proof of the bank book and pass book of the defendants showing an overdraft; and as preliminary proof, leading up to the overdraft, I will admit the note in evidence. To which the defendants except. Bill sealed.

Counsel for plaintiffs offers in evidence the bank pass book of A. C. Moyer & Co. with Gardner, Morrow & Co., having therein upon the credit side the checks, drafts and note read in evidence, and containing the debits or deposits made by A. C.

Moyer & Co. with the firm of Gardner, Morrow & Co., showing a balance of $1,312.29 due Gardner, Morrow & Co.

Counsel for defendants object to the offer of the bank book: (1) Because the charge of the note for $3,000 is not indicated in the bank book as the note now offered in evidence by the plaintiffs; (2) there is no evidence to show, either upon this book or otherwise, that any settlement was made with the defendants, the book showing simply an ex parte transaction, which only represents a part of the transaction between the plaintiffs and defendants.

By the Court: I am of opinion that where a bank book is produced by the defendant on notice from the plaintiffs, and that bank book, which is in possession of the defendants, shows a balance due the bank, it is prima facie evidence that the balance is correct, because when a customer of a bank has an account settled by the bank and thinks it is incorrect, he at once takes it back for rectification. If he has his individual bank book in his possession, showing an overdraft, I think it is prima facie evidence of the overdraft shown by it. Therefore I admit the bank book in evidence. To which the defendants except. Bill sealed.

Counsel for defendants offered to prove by James P. Gardner, that on or about January 15, 1896, this witness called upon the firm of Gardner, Morrow & Co., composed of Anthony S. Morrow and William Jack, at their banking house in Hollidaysburg, at which time there was an interview and an agreement between the witness and Anthony S. Morrow, representing the plaintiffs, to this effect. Prior to this time, the Second National Bank of Altoona held a note for $3,000, signed by the firm of A. C. Moyer & Co., which firm was then composed of A. C. Moyer and T. S. Gardner, the father of witness, and at the interview between Morrow, representing the bank, and the witness, it was agreed, at the request of the witness, representing the firm of A. C. Moyer & Co., that Gardner, Morrow & Co. should lift the note held by the Second National Bank of Altoona, and charge the same to the account of T. S. Gardner, in the bank of Gardner, Morrow & Co., and credit thereon the balance that was due from Gardner, Morrow & Co. to A. C. Moyer & Co.; that it was then and there expressly agreed by Mr. Morrow, representing the plaintiffs, that the bank would

lift this note and credit thereon the balance due in bank to A. C. Moyer & Co., and the balance due from Gardner, Morrow & Co. to T. S. Gardner, amounting to over \$1,000 upon the note and, if there was any balance of the note unpaid, it was agreed that the estate of T. S. Gardner should pay it. Upon the good faith of that transaction Mr. Morrow went to the Second National Bank of Altoona and lifted this note, and the estate of T. S. Gardner, acting upon the agreement, appropriated, under this agreement, the balance in bank to his credit to the payment of this note; that that balance in bank was permitted to remain there under this appropriation ever since, without being checked upon, except a few items for freight that were an incidental charge to that account. This for the purpose of showing a further credit of \$1,092 upon this note.

If objection be taken to the fact that James P. Gardner is a son of T. S. Gardner, defendants offer to prove that T. S. Gardner died intestate leaving a widow, Anna P. Gardner, and two children, Paul D. Gardner and James P. Gardner, the witness on the stand; that the estate of T. S. Gardner, represented by the widow and Paul D. Gardner, by an agreement dated January 3, 1898, and herewith exhibited to the court, released the witness from any liability, concurred in the appropriation that was made, and assented to his competency as a witness to testify to these facts; that upon the death of T. S. Gardner, James P. Gardner and Anna P. Gardner were duly appointed the administrators of his estate, and the appropriation and agreement made between Anthony S. Morrow and the witness was made between Morrow and the witness as administrator of the estate of T. S. Gardner, to which his coadministratrix, Anna P. Gardner, assented.

It is admitted that there is a balance of \$240 or \$250 due the plaintiffs upon this note, and this evidence is offered for the purpose of showing an additional credit upon the note in suit.

And it is further offered to show by the witness on the stand that the alleged settlement, as appears by the bank book of A. C. Moyer & Co. offered in evidence by the plaintiffs, was settled after the death of Anthony S. Morrow, and that he then and there insisted upon this additional credit being placed upon the note; that Mr. Gardner, upon the production of this bank book to him, objected to that balance as being the amount due from A. C. Moyer & Co. to the plaintiffs in this case.

In support of this offer counsel for defendants offer in evidence the release and the agreement executed by Anna P. Gardner, Paul D. Gardner and James P. Gardner permitting witness to testify. They propose further to show that Gardner and Morrow made a deed of assignment for the benefit of creditors, which assignment has been admitted in evidence, and that the estate of A. S. Morrow was then and is now totally insolvent, and that the estate of Anthony S. Morrow is in no manner affected by this evidence; that the real question at issue is between these defendants and the creditors of Gardner and Morrow, and not with the estate of Anthony S. Morrow.

Counsel for plaintiffs objects to the offer as a whole as being incompetent, irrelevant and immaterial, and as constituting a variance from the allegations of the affidavit of defense.

He objects to that portion of the offer relating to the fact that the account of James P. Gardner, and Anna P. Gardner, administrators of T. S. Gardner, deceased, was entitled to be charged with such part of the overdraft in suit as will amount to the balance of their account in bank, for the reason that James P. Gardner and Anna P. Gardner, administrators of T. S. Gardner, are not parties to this action, have no rights herein to be affected, and are not entitled to have any rights adjudicated here; and the release of interest offered in evidence does not make this witness competent to testify in behalf of parties whose rights are not in litigation, and is not sufficient to constitute a consent that the balance in the account of T. S. Gardner's administrators shall be set off upon plaintiff's claim.

He objects to the testimony offered for the reason that the alleged agreement between Gardner, Morrow & Co. and James P. Gardner was an agreement, if made at all, between the witness, who is a party defendant in this case, with A. S. Morrow, then a partner of Gardner, Morrow & Co., the said A. S. Morrow having since died, and the death of A. S. Morrow makes this witness incompetent to prove any facts connected with the claimed agreement which might adversely affect the firm of Gardner, Morrow & Co. or A. S. Morrow's estate.

He objects to the testimony, in so far as it is desired to prove the fact that the estate of A. S. Morrow, deceased, is not affected by the proposed proof, for the reason that if the evidence is admitted and the agreement is adjudicated as proved, the result

will affect the estate of A. S. Morrow, deceased, for the reason that his estate is liable for all the debts of Gardner, Morrow & Co., and the result of a finding by this jury as influenced by the evidence proposed to be proved, allowing the estate of T. S. Gardner, a credit upon the overdraft of Gardner, Morrow & Co. against A. C. Moyer & Co., will be to reduce the available assets of Gardner, Morrow & Co., and thus increase the actual liabilities of the estate of A. S. Morrow, deceased.

He objects to the introduction of the fact that the bank book in evidence was settled after the death of A. S. Morrow as irrelevant, immaterial and incompetent under the issues in the case.

By the Court: I think the witness called is a party whose interest is adverse to Anthony S. Morrow, a deceased party, and that this case comes within the exception of the act of 1887 allowing every person to be a competent witness. Therefore I exclude that part of the offer which proposes to prove a contract or interview between the witness and A. S. Morrow, representing Gardner, Morrow & Co.; but I will allow the witness to testify as to occurrences since the death of A. S. Morrow, and if the account in the bank book of defendant was settled after the death of A. S. Morrow I will allow the witness to testify to at least a portion of what took place when his attention was called to such settlement in his bank book. Just how much or to what extent he can so testify it is not now necessary to rule.

To which the plaintiffs and defendants both except and bill sealed for both parties. [4]

Under this offer, the witness, James P. Gardner, testified: " Q. The plaintiffs have offered a bank book of A. C. Moyer & Co., purporting to contain a settlement of the account of A. C. Moyer with these plaintiffs. Did you have that bank book in your hand? A. Yes, sir. Q. When was that bank book with that settlement given to you? A. I can't give the date. Q. With reference to the life of A. S. Morrow? A. It was some time after the death of A. S. Morrow. Q. State who gave it to you. A. It was either Mr. Cree or his agent at the bank. I think Mr. Cree handed it to me himself. Q. Were you present at the settlement of that account, or was it settled in your absence? A. There has been no settlement of it as far as I know. Q. Was it balanced in your presence? A. No, sir; it was

handed to me in the shape it is in now.   Q. State whether or
not you made any objection to the balance at the time when it
was given to you.   A. I didn't make the objection at that day,
because I just put it in my pocket and took it home to refer to
it; but immediately, or the next day, I think it was, I went
and hunted up Mr. Cree and stated that the balance was not
correct.   Q. What did you state as to wherein it was wrong?
A. I said there should have been a further credit of—"

Counsel for plaintiffs objects to what the witness stated to
Mr. Cree, as plaintiffs do not contend that there was any settle-
ment of this bank account or any admission on the part of
James P. Gardner or Moyer & Co., that the account was correct.
In the offer of the book counsel for plaintiffs offered the credits
deposited in the bank, leaving the balance to be struck, but will
not claim to the jury that there ever was an admission upon the
part of the defendants that the bank account was correct.

Counsel for defendants proposes to show wherein the witness
objected to it and what the error was he complained of.

By the Court: As plaintiffs' counsel has stated that he does
not claim that defendants ever admitted it was correct, I sustain
the objection.   I do not see that it is material. [4]

The court charged in part as follows:

[As I understand and recollect the argument of defendants'
counsel, they mostly lay the stress on Mr. Morrow's statement
that he had to do it, and ask you to infer that when he said he
had to do it he meant he had entered into a contract with the
Thaddeus Gardner estate whereby he was bound to lift the $3,000
note, and the Thaddeus Gardner estate was bound to apply
the balance due them in payment of said $3,000 note, on the
overdraft of the Moyer account, which would result from charg-
ing up the $3,000 note to the A. C. Moyer account.] [6]

[Now the plaintiffs seek to draw an entirely different infer-
ence from the facts in evidence.   They say, in the first place,
that no inference of a contract, such as defendants claim, is
to be drawn from the act of Gardner, Morrow & Co., in pay-
ing this $3,000 note, which was payable at the Second Na-
tional Bank; that it is the custom among bankers often to
pay matters which apparently are not directly drawn on their
bank; for instance, life insurance policies of their customers,

dues of building and loan associations, etc.; that they often pay these matters which are not directed to them in the form of a check or a note payable at their bank, and that they then charge them up to their customers as if they had drawn a check for them; that that is the reasonable and natural explanation of why Mr. Morrow apparently went out of his way to pay a note which was made payable at the Second National Bank of Altoona.

Then, too, in effect, it is claimed on the part of the plaintiffs that Mr. Morrow was not a shrewd, careful banker; but that he was a gentleman easily persuaded and that James P. Gardner was a grandson of his old partner, James Gardner, Sr., and that when he said he had to do it for James, that he meant simply, not that he was bound by any contract to do it, but that James had persuaded him to do it.] [7]

Verdict and judgment for plaintiffs for $1,469.75. Defendants appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions; (6–7) above instructions, quoting them.

*A. O. Furst*, with him *Thomas J. Baldrige*, for appellants.— Two questions are involved in the first three specifications of error; first, the admissibility of the note under the offer, without an offer of any evidence explaining the fact of payment and the possession of the note by defendants. Under the pleadings, it was not admissible, and could not be without amendment, and this, plaintiffs' counsel refused to do. Under the facts as they appeared, it, of itself, is not evidence of debt. It was in the possession of defendants rightfully. It was paid, and so written on its face in the handwriting of plaintiff, and it was further canceled by the stamp of Gardner, Morrow & Co.; second, the account was not admissible. The entries were not the subject of book entry: Nickle v. Baldwin, 4 W. & S. 290; Lonergan v. Whitehead, 10 W. 249; Alexander v. Hoffman, 5 W. & S. 382; Eshleman v. Harnish, 76 Pa. 97; Haverly v. Mercur, 78 Pa. 257; Stuckslager v. Neel, 123 Pa. 53; Shoemaker v. Kellog, 11 Pa. 310; Corr v. Sellers, 100 Pa. 169.

James P. Gardner was a competent witness: Dickson v. McGraw, 151 Pa. 98; Patterson v. Dushane, 27 W. N. C. 41;

Kuhns's Est., 163 Pa. 438; Turner v. Warren, 160 Pa. 336; Pringle v. Pringle, 59 Pa. 281; McClelland v. West, 70 Pa. 183; Updegraff v. Rowland, 52 Pa. 317.

*O. H. Hewitt,* for appellees.—An overdraft is an irregular loan by the bank to the customer, and can be recovered by the bank in an action therefor, and the form of action is indebitatus assumpsit for money paid to his use: Bank v. Macalester, 9 Pa. 475; Morse on Banks & Banking (3d ed.), sec. 357; Montgomery v. Exchange Bank, 5 Cent. Rep. 261; Meighen v. The Bank, 25 Pa. 288; Union Bank v. Knapp, 3 Pick. 96; Heller v. Royal Ins. Co., 151 Pa. 101.

Where paid checks of a depositor constitute overdraft of his account they may be introduced in evidence to prove the overdraft: Morse on Banks & Banking (3d ed.), sec. 460.

Gardner was an incompetent witness: Hanna v. Wray, 77 Pa. 27; Standbridge v. Catanach, 83 Pa. 368; Dickson v. McGraw Bros., 151 Pa. 98; Yard v. Pancoast, 108 Pa. 384.

OPINION BY MR. JUSTICE GREEN, July 21, 1898:

The learned court below gave to the jury an exceedingly clear and definite statement of the precise question they were to determine. It was a question of pure fact, and it was the controlling question of the case. The plaintiff firm were bankers, and the action was brought by their assignee to recover the amount of the overdraft by the defendant firm of $1.312.29 of their account, as depositors with the plaintiffs. There was but one item of dispute and that was an item of $1,103.50, to which the defendants claimed they were entitled to have credit in their account with the plaintiffs, but with which they were not credited. If the defendants were entitled to this credit the balance owing by them to the plaintiffs would be $208.79, and as to this there was no dispute. The defendants alleged that they were entitled to the credit of $1,103.50, because they were improperly charged with a sum of $3,000, which was paid by the plaintiffs for them, being the amount of a note for that sum due at another bank, but which the plaintiffs paid for the defendants and charged against them in the account of the defendants with the plaintiffs. There was no real question as to the fact of the payment of this $3,000 by

the plaintiffs for the defendants, because upon the settlement of the account of the defendants on the books of the plaintiffs this note was charged as a debit item, and the note itself was surrendered to the defendants. But the question was whether the plaintiffs had not contracted with the defendants, that a certain credit balance in the account of the estate of Thaddeus S. Gardner, deceased, on the plaintiffs' books, and amounting to $1,103.50, should be turned in by the administrator of T. S. Gardner, as a payment on account of the overdraft. The defendants claimed that such a contract had been made, but the plaintiffs denied it, and this was the issue of fact upon which the case turned. It was necessarily left to the jury, and the jury found by their verdict that such a contract had not been made. The learned trial judge very carefully explained this question, and very fairly and impartially charged the jury in reference to it, stating at some length the evidence relied upon on each side, and their respective contentions; and directing them to decide the question as they found the preponderance of the testimony to be on one side or the other. Having read the whole of the testimony and the arguments of counsel in this court, we are constrained to say that the whole controversy was fairly and fully presented by the court to the jury, and as it seems to us the verdict of the jury was right under all the testimony. But, however that may be, there was testimony in support of the integrity of the plaintiffs' claim, sufficient to sustain the finding of the jury, and we are therefore bound by the verdict. The fifth, sixth and seventh assignments are dismissed. The remaining assignments relate to offers of testimony. As to the first three of these, the checks and drafts offered constituted a part of the account of the plaintiffs against the defendants; the account itself had been settled in the manner usual with all banks; the bank book of the defendants was offered in the same connection, showing the credits of the defendants in the plaintiffs' bank, and the whole offer was made as preliminary proof leading up to the proof of an overdraft. We know of no reason why this offer was not competent. The establishment of the fact of an overdraft necessarily involved the state of the entire account. The individual checks and drafts were offered as parts of the account, and not as independent causes of action upon each instrument to establish

a separate contested liability on each. If upon the whole account there resulted a balance in favor of the bank as against the depositor, a cause of action would arise as for a loan or advancement of money to the extent of the debit balance. Such a claim could not be considered without a knowledge by the jury of the state of the whole account. The $3,000 note itself was then offered after having been produced by the defendants on notice, having been delivered by the plaintiffs to the defendants, on the settlement of the account, and marked on its face, " Paid by Gardner, Morrow & Co., January 15, 1896." It is impossible to understand why this was not competent proof. The objections that it was not specially declared upon and was not the subject of the book entry are quite untenable.

The cause of action was an overdraft upon an entire account, and the payment of the note was an item in the account. The plaintiffs paid it for the defendants ; they settled the whole account of which this entry was a part; they delivered to the defendants the note, along with other checks and drafts which they had also paid for the defendants, and also the bank book showing the settlement, including this note, and they were most undoubtedly entitled to have the whole account go to the jury, together with all the vouchers sustaining it, in the shape of checks, drafts and notes. The first, second and third assignments are dismissed. The only remaining assignment is the fourth, which relates to the competency of James P. Gardner as a witness to testify to a contract alleged to have been made by him with Anthony S. Morrow, a member of the plaintiff firm, during his life, he being then dead. The contract which was offered to be proved in this way was an agreement that the plaintiff firm of Gardner, Morrow & Co., should pay to the Second National Bank of Altoona the $3,000 note of the defendant firm, which had been discounted by that bank, and that the plaintiff firm should charge the amount thus paid to the account of T. S. Gardner, in the bank of Gardner, Morrow & Co., and credit thereon the balance due to T. S. Gardner on his account with Gardner, Morrow & Co. It was further offered to prove that T. S. Gardner was the father of the witness, and had died intestate, leaving a widow and two children, Paul D. Gardner and James P. Gardner (the witness), and that the widow and

Paul D. Gardner had released the witness from any liability on account of the transaction.

The witness was rejected as incompetent to testify to any matters occurring between him and the deceased member of the plaintiff firm, in the lifetime of the latter, but was allowed to testify to matters occurring subsequently to the death of the adverse party.

We do not see how there can be any question as to the propriety of this ruling of the court below. The witness was a living member of the defendant firm. He was called to prove a contract made by him with a dead member of the plaintiff firm, in order that his firm, and consequently himself, might escape a liability to which, upon the face of the plaintiffs' claim, they and he were otherwise subject. His testimony was adverse to the plaintiffs and to their dead member as one of them ; it related exclusively to a contract which, it was alleged, was made between that dead member and himself, and the purpose of the offer was to relieve the witness and his firm from a liability to which they were otherwise subject. It is difficult to imagine a plainer case of incompetency. It comes exactly within the prohibitive words of sec. 5, clause (*e*) of the Act of 1887, P. L. 158: " Nor where any party to a thing or contract in action is dead . . . . and his right thereto or therein has passed, either by his own act or the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract . . . . be a competent witness to any matter occurring before the death of said party." These are the precise conditions in the present case. It matters nothing whether A. S. Morrow was insolvent or not, and no release executed by the mother and brother of the witness could possibly relieve him of the disqualification imposed by the act. The fourth assignment is dismissed.

Judgment affirmed.